IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MARK WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:24-CV-23-KFP |
| | ) | |
| MARTIN J. O'MALLEY, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Mark Williams filed a Complaint seeking review of the Social Security Administration's decision denying his application for disability, disability insurance benefits, and supplemental security income. Doc. 1. The Court construes Plaintiff's supporting brief (Doc. 12) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 13) as a motion for summary judgment. The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). Docs. 4, 5.

After scrutiny of the record and the motions submitted by the parties, the Court finds that Plaintiff's motion for summary judgment is due to be DENIED, the Commissioner's motion for summary judgment is due to be GRANTED, and the decision of the Commissioner is due to be AFFIRMED.

## I. STANDARD OF REVIEW

"In social security cases, we review the Commissioner's decision for substantial evidence" *Mitchell v. Comm'r, SSA*, 771 F.3d 780, 782 (11th Cir. 2014). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). "If substantial evidence supports the conclusion, we must affirm the ALJ's decision, even if the evidence preponderates against it." *Weidlich v. Comm'r of Soc. Sec.*, 2023 U.S. App. LEXIS 30824, at *4 (11th Cir. Nov. 20, 2023) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)).

## II. FACTUAL BACKGROUND

Mark Williams was 35 years old at the amended onset date. R. 16. Williams "attended school through the 12th grade, and worked as a price marker, router and office helper." R. 17. His past job experience includes working as a police officer, a salesclerk, and a secondary education teacher. R. 24. Williams testified that his physical and mental impairments prevented him from working, causing "chronic back pain that radiated to his leg" and causing "functional limitations associated with walking and standing for prolonged periods." R. 132–33. Further, Williams "testified that his mental impairments caused functional limitations associated with social withdrawal, concentration, [and] anger issues." R. 133.

## III. PROCEDURAL BACKGROUND

On January 6, 2021, Williams filed an application for Social Security Disability benefits, citing an onset date of October 23, 2020. R. 110, 123, 330–35. His claim was denied. R. 150–154, 163–172. Williams then requested a hearing before an Administrative Law Judge (ALJ), which was conducted on January 25, 2023. R. 68–100, 150–54, 163–72. At that hearing, Williams's disability onset date was amended to February 1, 2020. R. 77, 127.

On February 28, 2023, the ALJ found Williams not disabled. R. 68–100, 124–143. Williams requested review of the decision by the Appeals Council. R. 241–43. The Appeals Council remanded the case. R. 144–149. A second hearing before an ALJ was held on September 6, 2023. R. 7–63, 32–63. On September 26, 2023, the ALJ entered a decision finding that Williams was not disabled because, while Williams could not perform the past work he had been employed in, he had the residual functional capacity (RFC) to perform other forms of light work. R. 13–25. Williams then requested review by the Appeals Council and was denied. R. 1–6. Thus, the ALJ's second hearing decision became the final decision of the Commissioner. *See* 42 U.S.C. § 405(g). Williams appealed to this Court.

## IV. THE ALJ'S DECISION

Upon review of the record, the ALJ found that Williams met the insured status requirements of the Social Security Act through December 31, 2025. R. 12. The ALJ further found that "claimant has not engaged in substantial gainful activity since February 1, 2020." R. 12. The ALJ determined that Williams had severe impairments of PTSD, depression, obstructive sleep apnea, anxiety disorder, headaches, bilateral meniscus tears,

arthritis of the bilateral hips, residual effects of fracture of T-6 vertebrae, residual effects of traumatic brain injury, antisocial personality disorder, illegal substance use, stimulant dependence, and degenerative disc disease. R. 13. The ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." R. 13. The ALJ determined Williams had the RFC to perform light work with limitations, and then found, based on testimony from the vocational expert (VE), that "there are jobs that exist in significant numbers in the national economy that the claimant can perform" even with his limitations. R. 15, 25. The ALJ thus determined that Williams was not disabled. R. 26.

## V.    ISSUES ON APPEAL

On appeal, Williams argues that "[t]he Commissioner's decision to deny Plaintiff's application[] was erroneous and was not supported by substantial evidence in the administrative record." Doc. 1 at 1. He raises three arguments on appeal: (1) the ALJ failed to properly evaluate the medical opinion evidence; (2) the ALJ failed to properly evaluate the subjective statements of Williams and other witness statements; and (3) the ALJ relied on a flawed hypothetical question to the VE. Doc. 12 at 3.

## VI.   DISCUSSION

### A.   Substantial evidence supports the ALJ's evaluation of the medical opinion evidence.

#### 1.   *Supportability and consistency factors*

Williams argues that the ALJ's assessment of Dr. Bloch's opinion evidence was not supported by substantial evidence, and that in considering the opinion evidence, "the ALJ was required to either adopt all the opinions from the consultants or provide some articulation for why specific limitations from the consultants were found not persuasive based on the factors of supportability and consistency." Doc. 12 at 9.

When considering medical opinions, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Instead, a series of factors are weighed when the ALJ considers medical opinions and administrative medical findings, including supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c(c); *Dease v. Kijakazi*, 2022 U.S. Dist. LEXIS 24810, at *7–8 (M.D. Ala. Feb. 11, 2022). In balancing these factors, "[t]he ALJ must explain how he considered the factors of supportability and consistency and how persuasive he finds a medical opinion or administrative medical finding based on [these] two factors." *Davis v. Kijakazi*, 2022 U.S. Dist. LEXIS 78066, at *8 (M.D. Ala. Apr. 29, 2022). The ALJ is not required "to[] explain how he considered the other remaining factors." *Id.* When examining the supportability and consistency of an opinion, "[t]he ALJ's analysis should determine 'whether the medical source's opinion is (1)

supported by the source's own records and (2) consistent with the other evidence of record.'" *Dease*, 2022 U.S. Dist. LEXIS 24810, at *8 (quoting *Gogel v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS 178430, at *17–18 (M.D. Fla. Sept. 20, 2021)). Upon appeal, "[the Court] must be able to determine what statutory and regulatory requirements the ALJ did in fact apply—where [the Court] cannot do that [it] must vacate and require a remand to the Secretary for clarification." *Jamison v. Bowen*, 814 F.2d 585, 589 (11th Cir. 1987).

Dr. Eric Bloch was Williams's treating psychologist, and he provided his medical opinion. While the ALJ did not state outright that "the medical source's opinion is supported by the source's own records," *Dease*, 2022 U.S. Dist. LEXIS 24810, at *8, the ALJ ultimately found that while "[Dr. Bloch's] opinion was well explained in" assessing "the claimant's functional limitations . . . it was inconsistent with the generally routine and conservative nature of treatment, as documented in his treatment records." R. 22. The ALJ further noted that "even though [Dr. Bloch] relied on the claimant's history report and his own observations" from treating Williams, that Dr. Bloch's opinion was not persuasive. R. 22. From these statements in the ALJ's opinion, it is clear that the ALJ assessed whether Dr. Bloch's opinion was supported by Dr. Bloch's history of treatment.

Additionally, in assessing the consistency of a medical opinion, the ALJ was tasked with determining whether Dr. Bloch's opinion was "consistent with the other evidence of record." *Dease*, 2022 U.S. Dist. LEXIS 24810, at *8. The ALJ found that Dr. Bloch's opinion was "inconsistent with evidence from other mental health treatment providers, which shows that the claimant has not experienced mental symptoms so severe as to require emergency or inpatient treatment since the first few months of 2020." R. 22. The ALJ

concluded that "Dr. Bloch's opinions are also inconsistent with the relatively mild clinical findings documented on mental status examinations throughout the record since early 2020 when [Williams] was hospitalized." R. 22.

Taken together, the ALJ's statements show that the ALJ reached its determination concerning Dr. Bloch's medical opinion by assessing the supportability and consistency factors. Because the Court can "determine what statutory and regulatory requirements the ALJ did in fact apply," there is no basis for finding the ALJ's decision was not supported by substantial evidence. *See Jamison*, 814 F.2d at 589.

### 2. RFC Limitations

Williams argues that because the limitations Dr. Register recommended in her opinion were not included as limitations in the ALJ's RFC finding, the limitations "conflict" with the ALJ's RFC. Doc. 12 at 9.

"[T]he regulations do not require ALJs to adopt into an RFC every part of an opinion that they otherwise find persuasive." *Sanders v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 60442, at *11 (M.D. Fla. Mar. 31, 2022); *see also* 20 CFR § 416.920c(a). "Indeed the applicable regulations contemplate that the same terms don't always mean the same thing, and so an ALJ may arrive at a degree of limitation different from that of a claimant's physician." *Sanders*, 2022 U.S. Dist. LEXIS 60442, at *12.

Angela Register, PhD, conducted an assessment of Williams on November 29, 2021. R. 23. She proposed limitations for the environment Williams would perform best in: a "well-spaced work environment" with "direct and supportive" supervision and "infrequent" changes in the work environment that are introduced

"carefully/gradually/clearly to avoid build-up of stress resulting in anxiety." R. 121. The ALJ found Dr. Register's opinion persuasive "as she relied on the claimant's history report, her own observations, and testing in providing her opinion." R. 23. The ALJ further found that her report was consistent with other reports given by different physicians in the record. R. 23. After determining that Dr. Register's opinion was persuasive, the ALJ was not bound to adopt every portion of her opinion in making the ultimate RFC determination. *Sanders*, 2022 U.S. Dist. LEXIS 60442, at *11 ("[F]inding an opinion persuasive does not mean it is controlling.").

The ALJ ultimately found Williams was able to

> . . . . perform simple, routine, and repetitive tasks in a structured, and low stress environment, i.e., to be quantified as involving tasks that can be explained and making simple decisions with only occasional changes in routine. He can have occasional contact with coworkers and supervisors but can never interact with the public.

R. 15. The ALJ included in the RFC finding that Williams would benefit from a "structured" and "low stress" environment" and that the tasks he's assigned "can be explained," and that he is tasked with "making simple decisions with only occasional changes in routine." R. 15. Dr. Register had recommended a "well-spaced work environment" with supervision that is "direct and supportive." R. 121. Thus, Williams's argument that "limitations [were] not reflected in the ALJ's mental RFC finding," Doc. 12 at 9, fails because it does not appreciate that the ALJ actually did include those limitations using different words. "[T]he applicable regulations contemplate that the same terms don't always mean the same thing, and so an ALJ may arrive at a degree of limitation different

from that of a claimant's physician." *Sanders*, 2022 U.S. Dist. LEXIS 60442, at *12. The ALJ's role is not to "play doctor" when discerning a claimant's RFC, but instead to "carr[y] out [a] regulatory role as an adjudicator." *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014).

Williams has not shown how the ALJ's decision failed to properly evaluate Dr. Register's opinion after finding it persuasive. Consequently, substantial evidence supports the ALJ's finding that Dr. Register's opinion was found to be persuasive and consistent with the reports in the record.

**B. The ALJ's evaluation of Williams's subjective statements and the statements of his witnesses is supported by substantial evidence.**

*1. Williams's statements*

Williams argues that the ALJ failed to properly evaluate his subjective statements about his condition.

Under 20 C.F.R. § 404.1529(c)(2), "a claimant's statements will not be rejected solely because the statements are not corroborated by the medical evidence—which is a very different circumstance from when the claimant's statements are *inconsistent* with the medical or other evidence of record." *Yanes v. Comm'r, SSA*, 2021 U.S. App. LEXIS 20972, at *23 n.14 (11th Cir. July 15, 2021). "When a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms," the Eleventh Circuit utilizes a three-part pain standard. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The claimant must present (1) "evidence of an underlying medical condition," as well as "either (2) objective medical evidence that confirms the severity of

the alleged pain arising from that condition," or "(3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* When medical evidence supports "[t]he claimant's subjective testimony," that in "itself [is] sufficient to support a finding of disability." *Id.* "If a claimant testifie[d] as to his subjective complaints of disabling pain and other symptoms . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

The ALJ stated that in relation to Williams's "mental health symptoms," "the objective evidence is inconsistent with what one would expect for an individual with severe anxiety, depression, PTSD and antisocial personality disorder." R. 19. The ALJ acknowledged that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 17. The ALJ cited to examples in the record of Williams's ongoing treatment for his mental health through the VA psychiatrist, his civilian psychiatrist, and his psychotherapy appointments with Dr. Bloch. R. 19–21. The ALJ noted that as recently as March 2023, a video visit with Veteran's Affairs (VA) psychiatry reflected that Williams "was not taking any prescription medication" for his mental health concerns, and that he was "future-oriented, goal directed, and stable overall." R. 20. Dr. Bloch's progress notes reflect Williams's mood was "generally noted to be either depressed or anxious," with Williams reporting improvements

in his mental symptoms while at other times reporting "increased anger and irritability." R. 20–21.

The ALJ noted that Williams was able to "perform a range of activities without any significant interference from psychological symptoms," including taking care of himself, his children, and his service dog and pets, as well as preparing his food, doing chores, using social media, attending church, going to the store, attending appointments, and driving a vehicle. R. 21. The ALJ noted that despite Williams's subjective description of his disabling symptoms, "they are not consistent with the treatment records or the claimant's reported activities." R. 17.[1]

As demonstrated above by the ALJ's recitation of medical evidence and recorded activities of Williams, the ALJ "articulate[d] explicit and adequate reasons" that Williams's subjective allegations of disability symptoms were inconsistent with the objective evidence introduced into the record. *Dyer*, 395 F.3d at 1210. For these reasons, substantial evidence supported the ALJ's finding.

### 2. *Witness statements*

Williams argues that the ALJ failed to properly evaluate the subjective lay witness statements of his father and wife, but the Commissioner did not respond to this argument.

Upon the ALJ's consideration of the statements of Williams's father and wife (R. 440, 445), the ALJ found that the third-party non-medical statements were "less

---

[1] The record shows that Williams takes care of his children as well as his service dog and other pets. R. 393. Williams further explains that he is able to prepare his own food and help with cleaning, laundry, dishes, and trash. R. 394. He further describes that he is able to go outside daily, drive a car, and go to the grocery store. R. 395.

persuasive" because "[t]he claimant's wife and father cannot be considered disinterested third-party witnesses whose reports would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges." R. 24.

"The testimony of family members is evidence of a claimant's subjective feelings of pain." *Osborn v. Barnhart*, 194 F. App'x 654, 666 (11th Cir. 2006). "[The Court] realize[s] that testimony from a claimant's spouse might be accorded less weight than testimony from a disinterested witness. . . ." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). "Even if the ALJ fails to make an explicit credibility determination as to a family member's testimony or statements, however, we will not find error if the credibility determination was implicit in the rejection of claimant's testimony." *Osborn*, 194 F. App'x at 666. The Eleventh Circuit has noted that while it is not a requirement that there be an "explicit finding as to credibility . . . the implication must be obvious to the reviewing court." *Tieniber v. Heckler*, 720 F.2d 1251, 1254–55 (11th Cir. 1983).

The Eleventh Circuit has remanded cases where "the implied credibility finding is not sufficiently clear to support the ALJ's conclusion that the petitioner's subjective evidence does not establish a disability." *Id.* at 1255. This finding is especially critical "where proof of a disability is based upon subjective evidence;" in such cases "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Id.* This is different from the situation in which the witness testimony "was to the same effect as that of the claimant," and thus the

"implication was obvious that the ALJ did not regard the testimony of claimant's [lay witnesses] as credible." *Id.*[2].

Accordingly, the Court finds that when the ALJ concluded that the statements of "claimant's wife and father" were rejected for their "natural tendency to agree with the symptoms and limitations the claimant alleges," that the ALJ assessed the statements as "less persuasive." R. 24. Thus, the "implication was obvious that the ALJ did not regard the testimony of claimant's [lay witnesses] as credible." *See Tieniber*, 720 F.2d at 1255 ("Although this circuit does not require an explicit finding as to credibility . . . the implication must be obvious to the reviewing court.").

The ALJ's decision to reject Williams's and his lay witnesses' subjective statements is supported by substantial evidence showing that these statements were inconsistent with the objective evidence in the record. There is thus no error in the determination reached by the ALJ.

---

[2] In situations where the ALJ "neglect[s] to elicit such clearly relevant and readily available testimony," the Eleventh Circuit has found that the ALJ failed in its "duty to develop the facts." *Brown v. Shalala*, 44 F.3d 931, 936 (11th Cir. 1995). Williams's brief (and some other cases dealing with the lay witness testimony issue) cite incorrectly to *Brown* for the purported quote, "Lay witnesses who know a claimant well may provide an important source of evidence to demonstrate the claimant's disability." *See* Doc. 12 at 14; *see also Barthol v. Astrue*, 2008 U.S. Dist. LEXIS 102558, *22–23 (M.D. Ala. Dec. 18, 2008); *Jones v. Astrue*, 494 F. Supp. 2d 1284, 1289 (N.D. Ala. 2007)—this statement is not found in *Brown*. In any event, *Brown* is distinguishable from this case; it involved a pro se claimant who waived her right to representation before the ALJ and was then denied benefits. *Brown*, 44 F.3d at 932, 934. Following the initial hearing with the ALJ, Brown retained an attorney while the Appeals Council considered Brown's request for review. *Id.* at 934. It was at this stage her attorney alleged "Brown's waiver of representation was invalid and [] the ALJ failed to fully develop the record." *Id.* Counsel then sought to introduce an affidavit from Brown's husband. *Id.* When the case was appealed to the district court, the Court did not elicit any witness testimony from Brown's husband. *Id.* at 936. There, the Eleventh Circuit found that the ALJ did not properly develop a record where testimony from Brown's husband was available. *Id.* In contrast, here it is clear the ALJ was presented with and acknowledged the witness testimony. R. 24, 440–41, 445–46.

### C. The hypothetical question posed to the Vocational Expert was supported by substantial evidence.

Williams argues that the hypothetical the ALJ provided the VE "failed to include any limitations" concerning Williams's "ability to concentrate over a period of time, persist at tasks, nor maintain a particular work pace over the course of a workday or workweek." Doc. 12 at 16–17.

"[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). Where "the ALJ accounted for [claimant's] moderate limitations in concentration, persistence, or pace by limiting him to simple, routine, and repetitive tasks," the Eleventh Circuit has found such a hypothetical question proper. *Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 713 (11th Cir. 2015).

In assessing Williams's mental impairments, the ALJ determined that Williams has "moderate limitation" in the areas of "remembering or applying information," "interacting with others," "concentrating, persisting, or maintaining pace," and "adapting or managing oneself." R. 14.  The ALJ then used the finding of Williams's "degree of limitation" in mental function to instruct the VE to consider "a hypothetical individual of [Williams's] age, education, work experience, and the residual functional capacity to lift and/or carry up to 20 pounds occasionally, 10 pounds frequently," and to "stand and/or walk with normal

breaks for a total of about six hours in an eight hour workday." R. 58. The ALJ further described various physical limitations, before concluding that the hypothetical includes limitations of "simple, routine, and repetitive tasks in a low stress environment" and requiring "simple decisions and only occasional changes in routine[,] [a]nd no work with the public." R. 59. In response to the hypothetical, the VE described jobs that would fall into the "light exertional" capacity for work and stated "there would be a representative number of jobs" including garment folder, remnant sorter, and garment sorter. R. 59–61.

Here, the ALJ's hypothetical limited Williams to simple, routine, and repetitive tasks. R. 58–59. Thus, under Eleventh Circuit precedent allowing for an ALJ to "limit[] the hypothetical to include only unskilled work," *Mijenes*, 687 F. App'x at 846, the ALJ's hypothetical was proper, despite not including a limitation of Williams's "ability to concentrate over a period of time, persist at tasks, nor maintain a particular work pace over the course of a workday or workweek." Doc. 12 at 16–17; *see Duval*, 628 F. App'x at 712-13 (finding that a limitation to "unskilled work" including "simple, routine tasks" is appropriate when posing a hypothetical question to the VE). Because substantial evidence in the record supports the ALJ's hypothetical, the Court finds the ALJ did not err.

## VII. CONCLUSION

For the reasons set forth above, the undersigned finds that the ALJ's determinations are supported by substantial evidence and that the ALJ correctly applied the law. Accordingly, it is ORDERED as follows:

1. Plaintiff's Motion for Summary Judgment (Doc. 12) is DENIED;

2.     The Commissioner's Motion for Summary Judgment (Doc. 13) is GRANTED; and

3.     The Commissioner's decision is AFFIRMED.

A final judgment will be entered separately.

DONE this 4th day of December, 2024.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE